U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

MAY 28 2009

TONY R. MOORE, CLERK
BY_____
       DEPUTY

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**ALEXANDRIA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CIVIL ACTION NO. 1:65-cv-12721** |
| -vs- | **JUDGE DRELL** |
| **AVOYELLES PARISH SCHOOL BOARD** | **MAGISTRATE JUDGE KIRK** |

## RULING

We have before us a proposal from the Avoyelles Parish School Board ("APSB" or the "Board"), submitted by written motion (Doc. #50), to alter radically the school configuration in Avoyelles Parish. In preparation for ruling on this motion, we held a detailed status conference on May 12, 2009, a hearing on the record on May 22, 2009, and we visited the schools subject to current proposals for change. After full consideration of the proposal, the evidence, submissions by the parties and the plan contents, we make the following observations and ruling.

In accordance with Brown v. Board of Education of Topeka, Shawnee County, Kansas, 347 U.S. 483 (1954), and the jurisprudence that has followed, a United States District Court presiding over a school desegregation case such as the one at issue is charged with the following duties: "(1) [t]o dismantle root and

branch the vestiges of the previously operated segregated dual school system 'with all deliberate speed[;]' (2) [t]o eliminate both the *de jure* segregation and the vestiges of that segregation to the extent practicable[;] and (3) [t]o further the return of the school system to local control. . . . " See Graham v. Evangeline Parish Sch. Bd., 223 F.R.D. 407, 411 (W.D. La. 2004) and the cases cited therein.

In discharging these duties, a District Court is to consider, among other things, certain matters that have come to be known as the "Green factors." These factors "must be met before a school system may be declared to be unitary and are generally thought to include the following: (1) faculty and staff assignments; (2) transportation; (3) extra-curricular activities; (4) facilities; (5) student assignment; and (6) curriculum." Id. [citing Green v. County Sch. Bd. of New Kent County, Va., et al., 391 U.S. 430 (1968)].

Local school boards are "charged with the affirmative duty to take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated." Green, 391 U.S. at 437-38. Critical to a determination of whether any or all of the Green factors have been met "is a finding by the District Court that the school system has demonstrated 'good faith' in the discharge of its obligations pursuant to the orders of the Court under which it ha[s] been operating . . . ." Graham, 223 F.R.D. at 412. See also Singleton v. Jackson Mun. Sep. Sch. Dist., 419 F.2d 1211 (5th Cir. 1969) (regarding assignment of faculty).

2

Until unitary status is achieved, the District Court must continue to preside over all efforts, plans, designs, and the like, with the goal of achieving the proper balance of racial desegregation. Along the way, the Court utilizes the guidelines enumerated in the foregoing jurisprudence and its progeny to encourage compliance with the <u>Green</u> factors. <u>See</u> <u>id.</u> at 411-412.

In the instant case, we are favorably disposed to the general nature of the plan, which will allow the Avoyelles Parish School Board to begin the process of reaching unitary status. However, we agree with the Government and intervenor that the current plan does not contain sufficient detail to explain how it will carry the Avoyelles Parish school system forward.

Of particular concern to us are the impending School Board elections and the ephemeral nature of the job of the Superintendent in Avoyelles Parish. While the present Superintendent has expressed good intentions to effectuate the proposed plan, if, for some reason, he does not continue to hold his current position, all would be in doubt.

At this juncture, our best option is to allow the current plan to move forward incrementally. Such an arrangement will challenge the School Board to continue to cooperate with the Government and the intervenor and to convince the people of Avoyelles Parish that it is headed in the right direction.

The history of the instant motion, and the plan, is as follows: In May 2008, the APSB brought to this Court a proposal similar to the present one. The major

difference was that the plan, as then proposed, had not been vetted properly. In that regard, we required the APSB to seek the good offices of a suitable expert in the area of school desegregation and realignment in order to study the Avoyelles school system and prepare a comprehensive plan. In consultation with counsel from the Justice Department and intervenor, Allen Holmes, the Board retained the services of Dr. William Gordon. Dr. Gordon is eminently qualified in this area. We are informed that Dr. Gordon had free reign to consider the several options that might be available for realignment of the schools in preparing his report. The report, which is of record, was submitted to the APSB on December 23, 2008. The content of the report is dramatic and proposes a solution to the Avoyelles problem that is far different from the current school configuration. The design by Dr. Gordon proposes, first, that three middle schools be closed in Bunkie, Marksville, and Mansura, with the seventh and eighth grade students being transferred, respectively, to the present high school campuses at Bunkie, Marksville, and Mansura. A second part of the proposal allows for the opening of a parish-wide middle magnet school at the Mansura middle campus. The third part pleads for the later closing of present high schools all, and the construction of a single, new, high school for the parish. Upon completion of this new high school, the final part of the proposal allows for the transfer of sixth grade students back from grammar school into rejoined middle school concept including seventh and eighth grades, but with those schools remaining in the present high school

campuses. The Mansura magnet campus might then be phased out, or rather phased back in, to the middle schools. The plan also requests implementation or modification of certain specific concepts at other schools.

When a proposal was submitted to the Court in the spring of 2008, we were astounded to learn that the middle schools and the grammar schools had been effectively financially victimized through funding cuts by the School Board in recent times past. Apparently those cuts came mostly from 2004 to 2005 and after a failed attempt to obtain adequate school funding from the citizens of Avoyelles Parish through appropriate taxes. The cuts, which were enacted by the Board, apparently involved the removal of counselors, librarians and assistant principals, with greatest impact at the middle schools. The nearly immediate result was the decline of programs and effective discipline at the middle schools. These changes further exacerbated the flight of students from the middle schools and probably the documented downward trend in performance scores of middle school students. The effects of such dramatic changes on desegregation efforts, while not specifically quantifiable here, are obvious. Bunkie Middle School appears to have been the hardest hit.

We do not have sufficient evidence as to whether the underfunding of the middle schools was deliberately designed to enhance the high schools or other parts of the system or was simply inevitable because of the failure of the tax initiatives. Suffice it to say, from our own observations of the situation at those

5

schools and as a result of extensive presentation of the parties, we are convinced that the operation of the middle schools of Avoyelles Parish is broken, perhaps beyond repair in their current state. In some instances this has to do with inadequate facilities and curriculum programs. In some cases it is clear that the public has lost confidence in the system, further exacerbating the problem of maintaining a correct, or nearly correct, racial balance in the schools. One thing is patently clear: until some stability is obtained the situation of the public's lack of confidence in the Avoyelles Parish schools will not get better. In making these observations, we do note with applause that the present Superintendent, undoubtedly with Board approval, took some stopgap measures, mostly for the 2008-2009 school year, which made things temporarily better at the middle schools. These changes included the addition of personnel to reopen libraries and "Deans of Students" who have been primarily responsible for enhancing order and discipline in the middle schools. Still, we observe that salvaging the current situation is fighting an uphill battle.

Floating in the midst of all of the considerations in this case is the discovery that, for a time period not exactly known, Avoyelles Parish has suffered from substantial "zone jumping" by students. That is, a statistically significant number of students in the parish have been attending schools outside their designated zones, apparently with impunity. The demographic effects of zone jumping also skew dramatically any proper calculation of an actual or appropriate

racial mix in any existing or proposed desegregation plan. The Superintendent has expressed a commitment that the Board intends henceforth to eliminate zone jumping to the maximum extent possible. Newer technology makes this both possible and feasible, and substantial reduction must occur. Until we have a better view of the effects of the promised zone-jumping enforcement, accurately gauging the actual current racial balances in the schools and accurately determining the effects of the new plan proposal, if implemented, is difficult, if not impossible.

In addition to the testimony and post-hearing position letters from the parties, we have received certain letters in opposition to the plan, one from two Board members who voted against adoption of Dr. Gordon's plan. The letters are cogent. The main objections to the plan appear to be that it will be too quickly implemented (not studied enough nor allowed proper community vetting), and that there has been no consideration given to the grammar schools, particularly in Bunkie. There is the additional concern, previously expressed by the Court, regarding the previous underfunding of middle schools.

During our recent tour of the affected schools and in conjunction with the status conference recently held, we learned another salient point. One effect of the establishment of the block system by this Court in 1988 has been, in some ways, to pit different geographical areas of the parish against each other for funding and enhanced programs. While no one has suggested anything improper

in this, the effect is a natural outgrowth of a design that sets up relatively isolated geographies. On the other hand, the up-side of the so-called block system has been the feeder system from grammar school to middle school to high school, all predictable, and easy to understand for parents who have to arrange for their children's education.

Thus, at this juncture we are faced with the kind of dilemma that is not unusual in such situations. As with all federal courts still having jurisdiction over particular school districts, we must balance all of the interests involved with a continuing view toward whether any proposal fosters desegregation. From what we see in Dr. Gordon's plan, it can and will, ultimately. The problem and the blessing for present purposes is that it is a phased plan and is capable of being implemented in pieces, at least to some degree. The single high school proposal has the most risk, because funding for the new school will require public participation via a new tax election. We are mindful that the public failed to support a Board proposal in 2005 for proposed improvements. We are not seers but easily surmise that the parish is not, at this juncture, united on what may be best in the long run.

That said, we <u>are</u> impressed with the Superintendent's positive outlook and commitment to move the Avoyelles schools to a higher level of achievement and quality. That is likewise true for the District Attorney's office, the members of the Justice Department assigned to this case, and Allen Holmes, the intervenor.

All of these persons have been candid, open and accessible. The discussion among them has been honest. What we, thankfully, have not found in all of these discussions is any wish for racial prejudice to be any longer a substantial issue in the decision-making that is ongoing. The recently implemented efforts at improving school leadership at the top levels by placing high caliber persons as principals is also a very positive step.

To summarize, the Court has before it an ambitious plan to improve the entire Avoyelles school system. It is dramatically different. If implemented all at once, it will likely result in extensive confusion and misunderstanding among the populace. Likewise, the stresses on the APSB's limited personnel and resources would likely result in many things done halfway, rather than a few things at a time done well. While we continue to be somewhat skeptical of the APSB's long term middle school aims, we can and will address those long-term funding and resource issues down the road. The current plight of the middle schools, whatever got them there, is the most pressing issue. The APSB's motives, politics and proclivities must fall far behind the needs of the children. The middle school children need improved facilities and access to resources. The proposed magnet school for Mansura is a strong idea, but the likelihood of its being able to be opened, promoted, and staffed sufficiently by August is doubtful. Its implementation at this point will add to the substantial confusion for parents and the population. In short, there are too many unknowns and variables in the

desegregation picture even to get a viable snapshot of the net effects of the plan if implemented in its entirety at this juncture. We have concluded that, for the present, it is far better for only a portion of the plan to go forward. The keystone will be the transfer of the middle schools to the high school campuses for the school year 2009-2010. The move is not without some logistical concerns, particularly at Marksville High School. Still, the Superintendent has devised an appropriate plan to address age separation and safety on those high school campuses, and the principals at those schools are strongly committed to make that plan work. If committed to their charge, the transfer involves effective zoning of the high school campuses and scheduling to ensure that inappropriate interaction among high school and middle school students does not occur. Further consideration by the Court of a more permanent nature regarding the middle schools will be made after January 1, 2010. The Court is also prepared to allow the opening of the proposed Mansura middle magnet school in 2010, assuming that the appropriate statistics and demographics are in order in January 2010. The balance of the overall plan, except as allowed below, must remain in abeyance and under consideration pending these further developments.

The Court expects the parties to invoke further proceedings after January 1, 2010 to review the situation current at that time. We also will expect the APSB to have further evaluation by Dr. Gordon to determine whether any additional review or realignment of the grammar schools should occur as an adjunct to the

plan. In this we are mindful of one of the objections lodged with the Court regarding the situation in Bunkie's grammar school, its campus size, and facility arrangement.

One final word is in order. The Avoyelles Parish School Board remains "behind the curve" in its efforts to become a unitary school system, this action having been pending since 1965. Many other school systems have worked diligently to be declared unitary and thus free from federal court intervention in the school system in achieving proper desegregation. It behooves the Board at this point to become of one mind in this regard. It likewise behooves the Board to find common ground to make the system work for the benefit of the children of the parish. School Board members are elected for one purpose and one only: to SERVE. The filing of the motion to approve a substantially revised plan has awakened this case. So long as this Court retains jurisdiction, we will remain vigilant to the issues in this case. From this vantage point it appears past time for the School Board, and the people of Avoyelles Parish, to recommit toward working together for the future. Effective education of children–all of them–is the crying need here. Thus, the Court will be watching the degree and extent to which the entire APSB and the good people of the parish commit themselves to all of the children and <u>their</u> needs. The Board must regain the public's confidence and make the plan work. The people must be more supportive of their schools. There is no other option.

In summary, as to the present implementation of the plan from Dr. Gordon:

IT IS ORDERED that:

1. The Board is permitted to implement the transfer of all current middle school students in Bunkie, Marksville and Mansura to Bunkie High School, Marksville High School and Avoyelles High School, respectively, on a trial basis at the beginning of the 2009-2010 school year. As part of this transfer, the Board shall implement curriculum policies to provide for eighth grade cross-registration with certain high school classes, as appropriate, even if the school of attendance is not designated as a magnet school. The Board shall complete minor construction at Marksville High School allowing separate access by middle school students. Appropriate separation and safety policies at each high school shall be implemented, in writing, which policies shall be available for review by all parties.

2. The Louisiana School for Agricultural Sciences will not accept seventh graders for the 2009-2010 school year. The request may be revisited in January 2010 with particular consideration to the results of the recruitment already begun by the school's principal in the "rebranding" of this school for the upcoming year.

3. Creation of a middle magnet school at Mansura is not allowed for the school year 2009-2010, pending submission of a complete plan for its

activation, recruitment, long-term funding and curriculum with a view toward possible activation for 2010-2011.

4. The proposed magnet "New-Tech" curriculum at Bunkie High School is allowed and may be implemented for 2009-2010.

5. For the same reasons set forth regarding Mansura, the creation of a magnet school at Bunkie Elementary School is not allowed for 2009-2010 but may be reconsidered for 2010-2011, pending receipt of a complete plan for its activation, long-term funding, recruitment and curriculum.

6. Consideration of implementation of the "one high school" concept is delayed at this time for one year, pending results of the middle school transfer, pending receipt of information satisfactory to the Court indicating a unified effort by the intervenor, the community and the Board to campaign successfully for passage of necessary taxes to fund construction of the proposed new school, and both a site plan and construction plan for same.

7. For the same reasons in Section 6, consideration of implementation of reworked 6-8 middle schools is delayed.

8. By June 1, 2010, the Board shall submit to the Court a proposed "master plan" by which the block system will be replaced and supplanted. Such plan shall address utilization of resources, funding, facilities, programs,

transportation, discipline and desegregation within the parish school system.

9. The Board shall, within a reasonable period of time, have an assistant superintendent who will be responsible for implementation of the Board's desegregation plan and who will have supervisory responsibilities over the Child Welfare and Attendance Sections (including correction of all issues regarding "zone jumping" by students), Human Resources and Personnel Section, and the School District's Hardship Committee. The assistant shall be responsible for preparing and submitting reports to the Court concerning desegregation as appropriate.

10. The Board shall immediately reassess its faculty (principals and teachers) assignments for the 2009-2010 school year in light of Singleton, *supra*, and shall report by January 31, 2010 both the results of that assessment and its recruitment plans to become Singleton compliant.

11. The Board shall immediately implement such remedial measures as are necessary to end the practice of students' attending school unauthorized outside of their attendance zone ("zone jumping").

12. By January 31, 2010, the Board shall submit to the Court and all parties a revised report reflecting the actual enrollments for 2009-2010, the respective racial mixes for each school, and which schools, at that juncture, remain racially identifiable.

13. The Board shall craft and insert in each student handbook a uniform, parish-wide, attendance enforcement policy.

14. The Board shall require from each school principal his or her verification that he or she has reviewed student enrollment in regard to Section 12 above.

15. The Board may alter the attendance zones as proposed by Dr. Gordon's report and shall include as part of the plan a correct attendance zone map reflective of the changes. Said map shall be furnished to any party, upon request.

16. The Board shall submit to the Court, beginning by January 31, 2010, an annual report which shall detail (a) student assignment by race and school, (b) teacher assignment by race and school, (c) principal assignment by race and school and (d) a facilities report. The facilities report shall include, *inter alia*, the status of maintenance and construction at Avoyelles High School, Bunkie Grammar School and Mansura Middle School.

17. The Board shall utilize the services of Mike Hefner to produce for the Court and the parties an updated projected enrollment report for each school for the 2009-2010 school year, likewise to be furnished to any party upon request.

18. The students at the Louisiana School for the Agricultural Sciences will be allowed to participate in sporting programs of the sending schools

pursuant to a separate Order to be submitted to the Court by the Board's counsel.

19. The Board must continue to consult with Dr. Gordon and shall annually report to the Court his assessment of the impact in all areas upon students in seventh and eighth grades transferred to high school campuses.

20. By January 31, 2011, the Board shall provide a comprehensive report to the Court addressing with specificity its efforts to satisfy the Green factors.

SIGNED on this 27TH day of May, 2009, at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE